**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **VINCO PAINTING, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 09 C 308** |
| **v.** | ) | |
| | ) | |
| **PAINTERS DISTRICT COUNCIL NO. 30,** | ) | **JUDGE DAVID H. COAR** |
| | ) | |
| **Defendant.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Vinco Painting Inc. ("Vinco" or "Plaintiff") brings this action pursuant to Section 301 (a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a), seeking to set aside and vacate two arbitration awards entered against Vinco and in favor of the Painters District Council No. 30 (the "Union" or "Defendant"). The Union counterclaims, seeking confirmation and enforcement of the two arbitration awards. Presently before this Court is the Union's motion for summary judgment on Vinco's claim and the Union's counterclaim. For the reasons stated below, the Union's motion is GRANTED.

**BACKGROUND**

Vinco is a Chicago-based painting contractor. (Defendant's Rule 56.1 Statement of Material Facts ("DSOF") ¶ 4.) Since August 30, 2007, Vinco has been a signatory to the collective bargaining agreements ("CBAs") negotiated by the Finishing Contractors of Illinois, an employer association, and the Painters District Council No. 30 (the "Union"). (*Id.* ¶¶ 11-12.) Specifically, Vinco has been a party to two consecutive CBAs, one effective May 1, 2004 through April 30, 2008 (the "2004 CBA"), and a second agreement effective May 1, 2008 through April 30, 2013 (the "2008 CBA") (collectively, the "CBAs"). (*Id.*) The 2008 CBA,

which was in place at the time of the arbitration awards in question, requires arbitration of contractual disputes by a panel of employer- and Union-appointed representatives known as the Joint Trade Board (the "JTB"). (*Id.* ¶ 13.) The eight-member JTB consists of four representatives appointed by the Union and four appointed by the employer association. (*Id.* ¶ 14.) The 2008 CBA provides for equal voting power between the employer and Union representatives and establishes that all arbitration awards "shall be final and binding." (*Id.* ¶ 16.) The JTB can fine noncompliant employers up to $2,500 "per violation" and require them to pay the Union's reasonable attorneys' fees and costs incurred while seeking judicial enforcement of a JTB award. (*Id.* ¶ 17.)

Under the CBAs, the JTB has the right to promulgate binding rules and regulations to govern its operation, and it has enacted such rules and regulations most recently in 2002 and 2008. (*Id.* ¶¶ 15, 22-23; DSOF Ex. 5 at PDC-94.) Both sets of rules provide that all evidence is admissible, regardless of the Rules of Evidence, and "[i]f a real or apparent conflict of interest between a Member of the JTB and any party to a proceeding arises during the pendency of a complaint, said Member shall disqualify himself or herself from participating in the proceedings." (DSOF Ex. 6- JTB Rules & Regs., rev. 2002; Ex. 7- JTB Rules & Regs., rev. 2008.) While both sets of rules preclude parties from bringing attorneys to their JTB hearings, the 2008 rules clarify that the JTB may have its own counsel present to assist in conducting hearings. (DSOF Ex. 3- Anderson Decl. ¶ 11; Ex. 6- JTB Rules & Regs., rev. 2002; Ex. 7- JTB Rules & Regs., rev. 2008.)

### *October 2008 JTB Hearing and Award*

On December 28, 2007, the Union filed several charges against Vinco, alleging that Vinco violated the 2004 CBA by (a) laying off four employees without providing their final

paychecks or compensating them properly for overtime work; (b) failing to provide proper paycheck stubs to two of these employees; and (c) failing to report the hours owed to the Benefit Funds Office. (*Id.* ¶¶ 18-19.) The JTB found in favor of the Union in January 2008. (Plaintiff's Rule 56.1 Statement of Material Facts ("PSOF") ¶¶ 4-5, 8.) However, when the Union subsequently sought judicial enforcement of the JTB's decision, the Court remanded the charges to the JTB on August 6, 2008 because the Union had failed to provide Vinco with sufficient notice of the January 2008 hearing. (DSOF ¶¶ 19, 21.)

On August 11, 2008, the Union resubmitted the same charges initially filed against Vinco on December 28, 2007. (*Id.* ¶ 19.) Additionally, on August 27, 2008, the Union brought new charges, alleging that Vinco violated the 2008 CBA by (a) failing to submit monthly reports to the Benefit Fund Office since September 2007; (b) failing to report current job sites to the Union since October 2007; (c) failing to renew its expired certificates of insurance; and (d) failing to have an adequate surety bond in place. (*Id.* ¶ 25.) In a letter dated August 29, 2008, the Union enclosed copies of the charges filed on August 11 and August 27, notified Vinco that the JTB would arbitrate those charges on October 8, 2008, and instructed Vinco to bring all time card, payroll, and tax records to the arbitration. (*Id.* ¶¶ 27-28.) The August 29 letter was personally served on Vince Angelilli, Vinco's president and sole shareholder. (*Id.* ¶¶ 8, 29.)

The JTB convened on October 8, 2008, and both Vince and his wife, Denise, whom Vinco employed to manage its office from August 4, 2006 to 2008, were present. (PSOF ¶ 1; DSOF ¶¶ 9, 30.) Vinco brought its attorney, but pursuant to the JTB's rules and regulations, he was excluded from the hearing. (DSOF Ex. 3- Anderson Decl. ¶ 21; Ex. 6- JTB Rules & Regs., rev. 2002; Ex. 7- JTB Rules & Regs., rev. 2008.) The Union was not represented by counsel at the hearing either. (DSOF ¶ 33.) At the beginning of the hearing, Vinco presented a written

motion to disqualify Union Secretary-Treasurer and JTB-member Charles Anderson ("Anderson") because of his alleged bias and "real or apparent conflict of interest" under JTB rules and regulations. (DSOF ¶ 31.) Vinco based its motion on events surrounding the 2008 judicial action to enforce the JTB's initial arbitration decision against Vinco. (DSOF Ex. 12.) Specifically, Vinco's motion claimed that (1) Anderson failed to ensure that Vinco had received notice of the hearing and allowed the hearing to proceed without Vinco present; (2) after entering an award against Vinco in Vinco's absence, Anderson told Vince Angelilli that he could get Vinco back before the JTB if Vinco gave him $50,000, an offer Vinco declined; and (3) Anderson caused an enforcement action to be filed against Vinco, testified against Vinco in that action, and, as the "Union's decision-maker," prevented the Union from paying Vinco the costs ultimately awarded by the Court. (*Id.* Ex. 12 at 2-3.) The Angelillis were instructed to leave the room while the JTB voted on Vinco's motion to disqualify. (PSOF ¶ 22.) Although Anderson remained in the room, he and his son, JTB-member Aaron Anderson, abstained from the vote. (*Id.*; DSOF ¶ 31.) When the Angelillis were called back into the room, they were informed that the JTB had unanimously voted to deny Vinco's motion to disqualify. (PSOF ¶ 22; DSOF ¶ 31.) In addition to presenting its motion to disqualify Anderson, Vinco made two requests, both of which were refused: (1) that everyone present at the JTB hearing sign a sign-in sheet; and (2) that the JTB continue the hearing and order the Union to meet with Vinco and furnish all documents and bases for the Union's claims. (PSOF ¶¶ 19-20.)

During the hearing, Union representative, James Stelasek, testified that members Loren Deland, William Medina, Jesus Mota, and Jeremy Weise reported to the Union that they had worked at various locations for Vinco but had not received their final paychecks and had not been properly paid for their overtime hours. (DSOF ¶ 34.) To supplement this testimony, the

JTB examined written summaries of these members' reports to the Union as well as documents they submitted such as paychecks and check stubs. (*Id.*; Ex. 13- JTB Mins., Oct. 08, 2008.) Stelasek also testified that, according to records of the Union and Benefit Funds, Vinco had not reported any job sites to the Union since October 2007, had not submitted monthly contribution reports or paid contributions to the Benefit Funds since September 2007, Vinco's insurance certificates had expired, and its surety bond amounted to half of the $20,000 required by the 2008 CBA. (DSOF ¶ 34.) Although the Union claims that the JTB's files and records reflect that Vinco did not present any documentary evidence at the October 2008 hearing, Denise Angelilli testified that Vinco offered copies of paychecks. (DSOF Ex. 29- Denise Angelilli Dep. 33:5-14, Sept. 2, 2009.) Various members of the JTB asked questions during the hearing, though Anderson conducted most of the interrogation of Vinco's representatives, Vince and Denise. (DSOF Ex. 28- Vince Angelilli Dep. 40:6-20, Sept. 2, 2009; Answer to First Amended Compl. ¶ 22.) Denise, who presented Vinco's position on the charges at issue, responded to most of the questions directed at Vinco. (DSOF ¶ 36.) No witnesses other than Denise and Stelmasek testified at the hearing. (*Id.* ¶ 37.)

After considering all of the evidence presented, the JTB unanimously found Vinco in violation of Article 4, Article 8 Sections 8.7(a) and (b), and Article 9 of the 2004 CBA and ordered Vinco to pay $2,043.58 to Loren Deland, $577.00 to William Medina, $536.83 to Jesus Mota, and a fine of $55,439.25 to the Union. (*Id.* ¶ 40.) Payments to the individuals, and a portion of the Union fine amounting to $5,439.25, were due within 10 days of notification. (*Id.*) With respect to the new charges set forth in the August 27, 2008 letter, the JTB ordered the following relief:

> Vinco Painting must report all jobs to the District Council for the period of time from August 30, 2007 continuing through the current Collective Bargaining Agreement;

provide the District Council with their State of Illinois tax number; bond the company at the appropriate level as required by the Collective Bargaining Agreement and submit all delinquent reports, and contributions within the next six days.

(DSOF ¶ 41; Ex. 11- JTB Mins., Oct. 9, 2008.)  On October 17, 2008, the JTB sent Vinco a copy of its decision, which Vinco later received.  (DSOF ¶¶ 43-44.)  By December 18, 2008, Vinco had not paid the fines assessed or otherwise complied with the JTB's order.  (*Id.* ¶ 45.)

### *February 2009 JTB Hearing and Award*

On December 18, 2008, in a letter sent from Stelmasek to Anderson, the Union charged Vinco with ongoing violations of the same CBA provisions at issue in the October 2008 hearing. (*Id.* ¶ 46.)  The letter further explained that the charges were a continuation of those initially submitted on August 27, 2008 and that Vinco had failed to comply with any of the JTB decisions on these matters.  (*Id.* ¶ 47.)  In a letter dated December 19, 2008, the Union notified Vinco of the charges, enclosed a copy of Stelmasek's letter, and explained that the JTB would hear the charges on January 22, 2009.  (*Id.* ¶ 48.)  The Union also instructed Vinco to bring time card, payroll, and tax records to the arbitration.  (*Id.* ¶ 49.)  At Vinco's request, the hearing was continued to February 25, 2009.  (*Id.* ¶ 51.)

Prior to the February 2009 hearing, Vinco requested a copy of the JTB rules and regulations, but that request was refused.  (PSOF ¶ 27; DSOF Ex. 29- Denise Angelilli Dep. 37:6-38:10, Sept. 2, 2009.)  However, Vinco had a copy of the nearly identical 2002 version of the rules, which had been provided to Vinco during the 2008 judicial enforcement action. (DSOF ¶ 22.)  On February 25, 2009, the JTB convened, and Vince and Denise Angelilli appeared on behalf of Vinco.  (*Id.* ¶ 54.)  Vinco again presented a written motion to disqualify Anderson from the hearing because of his alleged bias and conflict of interest.  (*Id.* ¶ 55.)  Again, the Angelillis were instructed to leave the room while the JTB voted on Vinco's motion to

disqualify. (PSOF ¶ 30.) Although Anderson remained in the room, he and his son, JTB-member Aaron Anderson, abstained from the vote. (DSOF ¶ 55.) When the Angelillis were called back into the room, Anderson informed them that the JTB had unanimously voted to deny Vinco's motion to disqualify. (PSOF ¶ 31.) Vinco also requested that all individuals present sign a sign-in sheet to identify themselves and the entities they represented, but that request was refused. (PSOF ¶ 25.) Denise requested a business card from the woman sitting next to Anderson, but she refused Denise's request. (*Id.* ¶ 32.)

Pursuant to the revised 2008 JTB rules and regulations, attorney Marisel Hernandez attended the hearing as counsel to the JTB to observe, and if requested, to assist the JTB in conducting the hearing. (DSOF Ex. 3- Anderson Decl. ¶ 42.) While Hernandez's law firm represents the Union and the Benefits Funds, Hernandez appeared only as counsel to the JTB as a whole. (*Id.*) Vinco objected to Hernandez's presence at the hearing, but the JTB overruled this objection, and Hernandez remained present. (PSOF ¶ 23.) Vinco asked the JTB for permission to have its lawyer present, and Anderson communicated the JTB's denial of this request. (*Id.* ¶ 24.) During the hearing, Hernandez neither acted as an advocate for the Union nor participated substantively in the proceedings. (*Id.*) Vinco alleges that she did, however, ask one apparently procedural question. Vinco, through Denise, tendered overdue benefit contribution report forms and contributions for the period of January through December 2008. (DSOF ¶ 59.) The forms were complete, aside from being unsigned. (*Id.*) Vinco alleges that, when Denise presented the unsigned forms to the JTB, Hernandez asked her whether she intended to sign the forms but said nothing further to Vinco's representatives during the hearing. (*Id.* ¶ 60.)

The February 25, 2009 JTB hearing was a very short one. (PSOF ¶ 33.) Anderson asked the majority of the questions directed at Vinco, and most of those questions were answered by

Denise.  (PSOF ¶ 26; DSOF ¶ 61.)  Vinco claims that its representatives were prevented from speaking, but the Union disputes this allegation.  (*Compare* DSOF Ex. 29- Denise Angelilli Dep. 57:7-21 *with* Ex. 3- Anderson Decl. ¶¶ 42-46.)  As the JTB had already heard evidence relating to the same charges at its October 2008 hearing, the only additional evidence presented at the February 2009 hearing included the materials submitted by Denise during the hearing and Union-representative Brian Dahl's testimony.  (DSOF ¶ 62.)  Dahl testified that he reviewed the records of the Union and the Benefit Funds and gleaned that Vinco had not remedied any of the violations at issue during the October 2008 hearing and had not complied with the JTB's award. (*Id.*)  Otherwise, the JTB relied upon the evidence submitted previously at the October 2008 hearing.  (*Id.*)  No witnesses other than Denise and Dahl testified at the hearing.  (*Id.* ¶ 63.)

After weighing all of the evidence, the JTB unanimously found that Vinco had failed to comply with the JTB's October 2008 ruling and ordered fines and back wages totaling $3,512,939.25.  (*Id.* ¶¶ 65-67.)  Specifically, with respect to the October 2008 award, the JTB demanded full payment of the $55,439.25 fine and "a fine of $2,500 per day, per man for each day that Loren Deland, William Medina and Jesus Mota remain unpaid as outlined in the October 8, 2008 ruling."  (*Id.* ¶ 67; DSOF Ex. 23- JTB Mins., Feb. 25, 2009.)  As of February 25, 2009, that fine amounted to $1,042,500.00 per man.  (*Id.*)  With respect to the charges originally brought on August 29, 2008, the JTB found Vinco guilty of violating Article 4 Section 4.2, Article 6 Section 6.9, Article 9 Sections 9.1, 9.3(b), and 9.3(d), and Article 13 Sections 13.1 and 13.2.  (*Id.* ¶ 68.)  For these violations, the JTB fined Vinco an additional $2,415,000.00.[1] (*Id.*)  On March 2, 2009, Anderson, on behalf of the JTB, mailed Vinco a letter notifying it of the

---

[1] The JTB's calculation, which Vinco does not dispute, is as follows: Article 4 Section 4.2: $2,500 per day for 138 days; Article 6 Section 6.9: $2,500 per day for 136 days; Article 9 Section 9.1: $2,500 per day for 138 days; Article 9 Section 9.3(b): $2,500 per day for 138 days; Article 9 Section 9.3(d): $52,500 per day for 138 days; Article 13 Section 13.1: $2,500 per day for 138 days; and Article 13 Section 13.2: $2,500 per day for 138 days.  (DSOF ¶ 68.)

JTB's February 25, 2009 decision.  (*Id.* ¶ 72.)  To date, Vinco has not paid the fines awarded or otherwise complied with the JTB's February 25, 2009 decision.  (*Id.* ¶ 74.)

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  If the movant meets this burden, the non-movant must set forth specific facts (a "scintilla of evidence" is insufficient) demonstrating that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 252.

When reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  *See Schuster v. Lucent Tech., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003).  At summary judgment, the "court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact."  *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

## ANALYSIS

It is well-settled that judicial review of arbitration awards is extremely limited.  *See Monee Nursery & Landscaping Co. v. Int'l Union of Operating Eng'rs*, 348 F.3d 671, 675 (7th

Cir. 2003); *Jasper Cabinet Co. v. United Steelworkers of Am.*, 77 F.3d 1025, 1028 (7th Cir. 1996). The court will not review arbitral awards for legal or factual error. *Prostyakov v. Masco Corp.*, 513 F.3d 716, 723 (7th Cir. 2008). Rather, the reviewing court's role is limited to determining whether the arbitrator's award "draws its essence from the collective bargaining agreement." *Ganton Techs., Inc. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 358 F.3d 459, 462 (7th Cir. 2004) (quoting *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)) (internal quotation marks omitted). The court will uphold an arbitrator's decision if the arbitrator arguably acted within the scope of his authority in interpreting the CBA—even if the arbitrator committed a serious error of fact or law in reaching its decision, *Monee Nursery & Landscaping Co.*, 348 F.3d at 675, and any reasonable doubt will be resolved in favor of enforcing the award. *Ethyl Corp. v. United Steelworkers of Am.*, 768 F.2d 180, 185 (7th Cir. 1985). As the Seventh Circuit recently explained, any more searching form of review "would defeat the purpose of entering into an arbitration agreement in the first place—to opt out of the judicial system—and we will neither deprive parties of the benefits, nor shield them from the pitfalls, that arise when they agree to settle their disputes outside of the courts' purview." *Prostyakov*, 513 F.3d at 723; *see also Dean v. Sullivan*, 118 F.3d 1170, 1173 (7th Cir. 1997) ("A party's choice to accept arbitration entails a trade-off. A party can gain a quicker, less structured way of resolving disputes; . . . Parties lose something, too: the right to seek redress from the courts for all but the most exceptional errors at arbitration.").

Vinco challenges its arbitration awards by asserting three general arguments: (1) the arbitration hearings were unfair and violated due process; (2) JTB-member Charles Anderson

was impermissibly biased and should have been excluded from the JTB's decision-making; and (3) the size of the awards was excessive. The Court will address each argument in turn.

## I.     Due Process

Vinco alleges that a series of procedural irregularities tainted its hearings: (1) Vinco lacked sufficient notice of the charges; (2) Vinco is inexperienced in the grievance proceedings and new to business; (3) the Union refused to meet with Vinco prior to the October 2008 hearing; (4) the JTB refused to give Vinco a copy of its updated rules and regulations; (5) Vinco was improperly denied representation by counsel; (6) Vinco was denied the opportunity to confront certain witnesses; and (7)Vinco was denied a full opportunity to present evidence.

An arbitrator is required to provide a "fundamentally fair" hearing. *Generica Ltd. v. Pharm. Basics, Inc.*, 125 F.3d 1123, 1130 (7th Cir. 1997). A hearing is "fundamentally fair" if it "meets the minimal requirements of fairness- adequate notice, a hearing on the evidence and an impartial decision by the arbitrator." *Bhd. of Locomotive Eng'rs v. Union Pacific R. Co.*, 522 F.3d 746, 751 (7th Cir. 2008) (quoting *Int'l Bhd. Elec. Workers v. CSX Transp. Inc.*, 446 F.3d 714, 720 (7th Cir. 2006)) (internal quotation marks omitted). That said, "parties that have chosen to remedy their disputes through arbitration rather than litigation should not expect the same procedures they would find in the judicial arena." *Generica*, 125 F.3d at 1130.

With respect to Vinco's first allegation, the Union argues that the undisputed facts reveal that Vinco received advance, written notice of all charges heard by the JTB. As to Vinco's second allegation, the Union contends that inexperience is not cause for a due process challenge. Both of these arguments are well-taken. Moreover, because Vinco fails to address the Union's arguments in its summary judgment response, Vinco has waived any objection to these arguments. *Palmer v. Marion County*, 327 F.3d 588, 597-98 (7th Cir. 2003); *DeLaney v.*

*Chertoff*, No. 07 C 5785, 2008 WL 4773163, at *3 (N.D. Ill. Oct. 30, 2008). Summary judgment is therefore warranted on Vinco's notice and inexperience claims.

Vinco's other allegations require a bit more analysis. Apparently supporting its due process claim, Vinco presents a two-page narrative describing its perception of the JTB hearings and the alleged irregularities involved. (*See* Pl.'s Resp. to Def.'s Mot. for Summ. J. 10-12.) However, despite the catalog of complaints included in this narrative, Vinco presents little real argument as to how it was denied due process at either of its JTB hearings. Ultimately, Vinco's due process claim is doomed by its failure to explain how any facet of its hearings was unfair— let alone "fundamentally unfair." *See Bhd. of Locomotive Eng'rs*, 522 F.3d at 751. When the Court sorts through the various allegations contained in Vinco's narrative, it becomes clear that the Union is entitled to summary judgment on each of Vinco's due process claims.

First, Vinco challenges the Union's unwillingness meet with Vinco prior to the October 2008 JTB hearing. Citing *IBEW Local No. 1186*, 264 NLRB 712 (1982), Vinco argues that the Union failed to satisfy its obligation to meet upon request and produce documents relating to its grievances. Vinco's reliance on *IBEW Local No. 1186* is misplaced. That case holds that, when a party to a collective bargaining agreement submits a grievance, the *other party* must process it through the contractual arbitration machinery. *See id.* at 721. It does not stand for the proposition that the *same party* that submits a grievance must engage in discussions with the opposing party short of arbitration. In this case, the Union submitted its grievance through the process delineated by the parties' collective bargaining agreement, and that was all that it was obligated to do.

Vinco also complains that it was refused copies of the JTB rules and regulations. However, it is undisputed that, during the 2008 judicial enforcement action, Vinco was provided

with a copy of the then-current rules, which had last been revised in 2002. Sometime in 2008, however, the rules were minimally altered to clarify that, while parties may not bring their attorneys to JTB hearings, the JTB's own counsel may attend hearings. In accordance with this rule, the JTB's attorney attended the February 2009 hearing, but not the October 2008 hearing. At any rate, Vinco fails to argue—nor can the Court fathom—any reason why the JTB's failure to provide Vinco with an updated copy of its rules resulted in a fundamentally unfair hearing. *See Bhd. of Locomotive Eng'rs*, 522 F.3d at 751.

Vinco's next argument suffers from similar deficiencies. Here, Vinco complains that it was improperly denied representation by counsel at both the October 2008 and February 2009 hearings. The parties' CBAs imbue the JTB with the authority to promulgate binding rules for its operation, and these rules and regulations, which were enacted by the entire JTB, deny parties the right to representation by counsel. Pursuant to the JTB's rules, neither the Union nor Vinco was represented by counsel at the October 2008 hearing. Nor were the parties represented by counsel at the February 2009 hearing. Vinco complains, however, that Marisel Hernandez, who both serves as counsel to the JTB and represents the Union, attended the February 2009 hearing. In response to this complaint, the Union submits that Hernandez appeared only in an advisory capacity to the entire JTB, and not as the Union's representative. Vinco, in turn, fails to provide any evidence to counter the Union's position. Vinco alleges merely that Hernandez asked Vinco's representatives a single question during the hearing—whether Denise planned to sign the overdue benefit contribution report forms she submitted to the JTB. Even if this allegation proves true, it is unclear how this question was unfair to Vinco. More broadly, Vinco fails to explain how a fundamentally unfair hearing resulted from either Hernandez's presence or the JTB's policy prohibiting Vinco's counsel from attending its hearings.

Next, Vinco complains that none of the employees whose grievances were addressed by the JTB were present for the hearings, depriving Vinco of its "right to cross-examine them." (*See* Pl.'s Resp. to Def.'s Mot. for Summ. J. 10.)  However, Vinco has no such right; this is not a criminal case governed by the Sixth Amendment.  Under the JTB's rules, all evidence is admissible, and the JTB was entitled to rely on documentary evidence and hearsay to establish the contractual violations at issue.  Moreover, this argument is defeated by Vinco's failure to object to these employees' absence at either hearing.  *See Dean*, 118 F.3d at 1172 (A party "cannot stand by during arbitration, withholding certain arguments, then, upon losing the arbitration, raise such arguments in federal court.") (citation and quotation marks omitted).

Finally, Vinco's claim that it was denied a full opportunity to present evidence at either hearing fails as well.  Before both hearings, Vinco was instructed to bring various documents including time card, payroll, and tax records; however Vinco tendered almost none of these documents.  In any event, there is no evidence that the JTB refused to accept or consider the documents that Vinco did provide.  Denise Angelilli testified as Vinco's representative during both hearings and responded to the questions JTB members posed to her.  The parties dispute whether the JTB permitted Vinco to speak at the February 2009 hearing—a hearing that both parties agree was quite short and limtied.  Despite this dispute, the Court notes that Vinco's claim that its representatives were prevented from speaking is substantially weakened by Vinco's admissions that (1) it presented a motion to disqualify Anderson; (2) Denise tendered Vinco's overdue benefit contribution report forms; and (3) Denise testified on behalf of Vinco and responded to JTB members' questions.  However, even accepting that Vinco was unable to raise issues it deemed relevant, that is not a reason for overturning the JTB's decision.  While arbitrators must give each party an adequate opportunity to present its evidence and arguments,

they are not required to hear all evidence tendered by the parties. *Generica*, 125 F.3d at 1130. At the February 2009 hearing, Vinco was charged simply with failing to remedy the violations at issue during the October 2008 hearing. Given the repeat appearance of these charges, the JTB relied primarily on evidence submitted at the October 2008 hearing, as well as Union-representative Brian Dahl's testimony that Vinco had failed to remedy previously existing violations or comply with the JTB's October 2008 decision. The JTB was entitled to rely entirely on this evidence to support its February 2009 decision. Moreover, Vinco does not dispute that it failed to comply with the JTB's prior orders. Nor does Vinco identify any specific evidence it had hoped to offer in support of its case. Ultimately, Vinco fails to demonstrate that its opportunities to present evidence before the JTB were inadequate.

Vinco's various due process claims, when considered separately or together, cannot establish that the JTB provided Vinco with anything less than "fundamentally fair" hearings. *See Generica*, 125 F.3d at 1130. Accordingly, the Union is entitled to summary judgment on Vinco's due process claims.

## II.     Evident Partiality

Vinco next submits that the Court should set aside the JTB's decisions because they were tainted by the board's "evident partiality." The Federal Arbitration Act allows courts to vacate arbitration awards in very limited situations, including where there is "evident partiality" on the part of the arbitrator. 9 U.S.C. § 10(a)(2). Such "evident partiality" exists where a "reasonable person would . . . conclude that an arbitrator was partial, *Midwest Generation EME, LLC v. Continuum Chemical Corp.*, No. 08 C 7189, 2010 WL 2517047, at *2 (N.D. Ill. June 21, 2010) (quoting *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 151, (1968) (White, J., concurring)) (internal quotation marks omitted), or, more specifically, where an

arbitrator's bias is "direct, definite and capable of demonstration rather than remote, uncertain, or speculative." *Harter v. Iowa Grain Co.*, 220 F.3d 544, 553 (7th Cir. 2000) (citation and quotation marks omitted); *see also Merryman Excavation, Inc. v. Int'l Union of Operating Eng'rs*, No. 06 C 5160, 2009 WL 2515628, at *23 (N.D. Ill. Aug. 17, 2009) (same). This standard is quite difficult to meet. *See, e.g.*, *Harter*, 220 F.3d at 556. Nevertheless, when a party claims arbitral bias, the court must "scan the record" for evidence of partiality. *Id.* at 557 (quoting *Health Servs. Mgmt. Co. v. Hughes*, 975 F.2d 1253, 1258 (7th Cir. 1992)) (internal quotation marks omitted).

Vinco argues that Anderson demonstrated "evident partiality," or at least had a "real or apparent conflict of interest" under the JTB's rules and regulations. (DSOF Ex. 6- JTB Rules & Regs., rev. 2002; Ex. 7-JTB Rules & Regs., rev. 2008.) Much of Vinco's argument rests on the fact that Anderson is the highest ranking official of the Union, which opposes Vinco in this matter. However, to the extent that Vinco argues that Anderson's Union leadership inherently biased him against Vinco, that argument must fail. As the Seventh Circuit has recognized, "[t]he parties to an arbitration choose their method of dispute resolution, and can ask no more impartiality than inheres in the method they have chosen." *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 679 (7th Cir. 1983) (citations and quotation marks omitted). More recently, in *Harter v. Iowa Grain Co.*, the Seventh Circuit observed that "in settings where arbitrators and litigants were structural adversaries, . . . we have never found evident partiality." 220 F.3d at 556. In keeping with this observation, the court rejected the plaintiff's argument that an arbitration panel comprised of his competitors was inherently biased; the court held, instead, that it would vacate the arbitration award only if the plaintiff could show that the panel had exhibited *direct* bias against him. *Id.*

Here, the parties bargained for a joint arbitration board structure. Recognizing that every dispute before the JTB would pit the Union's representatives against an employer, they provided for equal voting blocs of Union- and employer-appointed representatives. The JTB's structure is therefore designed to accommodate and neutralize board members' inherent biases. As such, it naturally accounts for the likelihood that Anderson, both a Union representative and its chief executive, might be inclined to favor the Union. *See Arco Enterprises, Inc. v. Operative Plasterers'*, 124 Fed.Appx. 710, 712 (9th Cir. 2005) ("Presumably, . . . each member of the [arbitration panel] would be biased towards the interest of the entity which selected him or her, and any impartiality in the [arbitration panel] would arise from the fact that each side got to select an equal number of representatives.") Anderson's inherent bias toward the Union, which is anticipated by the JTB's structure, is not the type of "evident partiality" that permits the Court to dismantle an arbitration award.

Vinco argues further that the JTB's "evident partiality" is underscored by Anderson's actions during the 2008 litigation and, his son, Aaron Anderson's participation in the hearings. These arguments are really just extensions of the argument rejected above and fail for the same reasons. As an example of Anderson's "evident partiality," Vinco points to Anderson's involvement in the initial January 2008 hearing, which resulted in an award against Vinco, despite Vinco's absence from the hearing. According to Vinco, Anderson's bias is revealed by his initiation of a judicial action to enforce the January 2008 award, his participation in that action, and his responsibility for the Union's refusal to pay Vinco the costs awarded when the Court vacated the January 2008 award. The 2008 litigation, however, is just another chapter in the same dispute that gave rise to this case. That Anderson stood opposed to Vinco during the 2008 litigation is no more significant than his inherent bias as a Union representative, and it is

not grounds for vacating Vinco's awards.  Vinco's argument that the JTB was improperly partial because of the participation of Anderson's son and other employees fails for similar reasons. Regardless of their specific relationships to Anderson, these JTB members are all Union employees who can be presumed to inherently favor the Union.  Just as the JTB's structure accommodates Anderson's inherent bias, it accommodates theirs as well.

Finally, Vinco argues that Anderson demonstrated "evident partiality" when he allegedly directed a number of personal slights and affronts at Vinco.  Although Anderson denies these allegations, Vinco claims that Anderson told Denise that (1) he put people in jail for not paying benefits and not following the rules, and (2) he didn't have a good taste in his mouth about Vinco.  (DSOF Ex. 29- Denise Angelilli Dep. 8:19-24.)  Vinco also claims that Anderson insulted Vince's Italian-American ethnicity.  (DSOF Ex. 28- Vince Angelilli Dep. 30:22-31:6.) Assuming that Vinco's allegations are true, even if they demonstrate that Anderson disliked Vinco or the Angelillis, they do not establish "evident partiality" on the part of the board as a whole.  Anderson was just one of the eight JTB members who unanimously voted against Vinco, and there is no evidence that he improperly influenced the other seven JTB panel members to turn against Vinco.  Although it is undisputed that Anderson posed most of the questions addressed to Vinco, Vinco identifies no facts suggesting that Anderson prevented others from speaking or somehow interfered with the independent votes cast by the other seven panel members.  *See Local 814, Int'l Bhd. Of Teasters, Chauffeurs, Warehousemen & Helpers of Am. v. J&B Sys. Installers & Moving Inc.*, 878 F.2d 38, 40-41 (2d Cir. 1989) (refusing to vacate arbitration award where one of six joint arbitration board members was allegedly biased because the board's structure limited one member's influence, and any allegation that he "might have

improperly influenced" the others was too speculative to establish "evident partiality.").[2]  As the Union persuasively argues, Vinco cannot escape the fact that it was unable to convince a single employer-appointed JTB member to vote in its favor.  Ultimately, Vinco fails to raise a genuine issue of material fact as to the existence of "evident partiality" on the part of the JTB in this case. The Union is therefore entitled to summary judgment on Vinco's "evident partiality" claim.

### III.    Vinco's Fines

The Court must also reject Vinco's argument that the JTB exceeded its powers by imposing excessive fines.  Like other aspects of their decisions, arbitrators' contract interpretations face limited judicial review.  The Seventh Circuit has noted that "[i]t is abundantly clear that it is the arbitrator who is behind the driver's wheel of interpretation, not the court.  Great deference is paid to an arbitrator's construction and interpretation of an agreement." *Dexter Axle Co. v. Int'l Ass'n of Machinists and Aerospace Workers*, 418 F.3d 762, 768 (7th Cir. 2005).  Only if an award fails to "draw its essence" from the collective bargaining agreement— for instance, by relying on some authority outside of the agreement or by failing to interpret the agreement at all—may a court vacate the award.  *Id.*  "It is only when the arbitrator must have based his award on some body of thought, or feeling, or policy, or law that is outside the contract . . . that the award can be said not to draw its essence from the [agreement]."  *Id.* (citation and quotation marks omitted).  Permitted to vacate "only when there is no possible interpretive route to the award," *id.* (citation and quotation marks omitted), courts will even "uphold an arbitrator's award based upon a misreading of the contract."  *Jasper Cabinet Co.*, 77 F.3d at 1028 (citation

---

[2] Vinco's reliance on the Second Circuit's decision in *Morelite Constr. Corp.* to support its "evident partiality" argument is misplaced.  Unlike this case, which involves an eight-member arbitration board, the court in *Morelite* vacated an arbitration award because the *sole* arbitrator was the son of a union official involved in the controversy. *Morelite Constr. Corp. v. New York City Dist. Council of Carpenters Benefit Funds*, 74 F.2d 79, 84-85 (2d Cir. 1984).

and quotation marks omitted). All that is required is that the arbitrator's interpretation derives from the language of the agreement. *Id.* at 1029.

Here, the JTB arrived at the fines it imposed on Vinco by relying on the CBAs' provision preventing the JTB from imposing fines greater than $2,500 "per violation." The CBAs never define "per violation" explicitly, and under the JTB's interpretation, each day an employer violates a contract provision constitutes a separate violation and warrants a separate fine of up to $2,500. The fines incurred by Vinco—based on numerous contractual violations renewed over numerous days—are indeed steep. However, the Court is bound to uphold these fines because the JTB's interpretation of their contractual basis clearly derives from the language of the agreement. While Vinco cites the well-established principle that a contract should not be interpreted so as to produce absurd results, it is important to note that, in this case, the JTB is charged with interpreting the contract, not the Court. Even if the JTB's interpretation is "absurd," the Court must uphold the JTB's award as long as the JTB was in fact interpreting the parties' agreement. *See Dexter Axle Co.*, 418 F.3d at 768. The JTB has cleared this very low threshold.

As a final attempt to dismantle the arbitration awards at issue, Vinco argues that they are unconstitutionally excessive. Although Vinco does not reference any specific constitutional provision to support its argument, the Court construes Vinco's argument as grounded in the United States Constitution's substantive due process protections. That said, Vinco's constitutional right to due process is a right as to the state, not private parties such as the Union, and Vinco fails even to argue otherwise. *See Davis v. Prudential Sec.*, 59 F.3d 1186, 1191 (11th Cir. 1995) (rejecting argument that the district court violated due process by confirming an arbitrator's punitive damages award and stating, "we agree with the numerous courts that have

held that the state action element of a due process claim is absent in private arbitration cases."); *cf. Smith v. Am. Arbitration Ass'n, Inc.*, 233 F.3d 502, 507 (7th Cir. 2000) (declining to apply *Batson v. Kentucky* to arbitration proceeding because arbitration is a private action that does not implicate the due process clause, and the fact that courts enforce arbitration awards does not convert the awards into manifestations of state action). Because the awards in this case do not violate (or even implicate) due process rights, and they stem from a viable interpretation of the CBAs, the Court must reject Vinco's claim that the JTB imposed fines in excess of its powers.

## IV. Attorneys' Fees and Costs

Finally, the Union argues that Vinco must pay its attorneys' fees and costs in enforcing the JTB's awards. Courts may enforce collective bargaining agreement provisions that require recalcitrant employers to pay the attorneys' fees of parties who bring successful enforcement actions against them. *See Harter*, 220 F.3d at 557-58; *Local No. 20 Sheet Metal Workers Int'l Ass'n v. Culver Roofing*, No. 04 CV 142, 2006 WL 229041, at *5 (N.D. Ind. Jan. 30, 2006) (upholding similar CBA provision). Here, the parties' CBAs require an employer to pay reasonable attorneys' fees and costs incurred by a party enforcing a JTB award against it. Because the JTB ordered Vinco to pay certain wages and fines, and Vinco's failure to comply with the JTB's awards compelled the Union to seek confirmation of those awards, the Union is entitled to reasonable attorneys' fees and costs incurred in connection with this action. Vinco's failure to address the instant argument in its summary judgment response renders the Court's conclusion all the more inevitable. *See Palmer*, 327 F.3d at 597-98; *DeLaney v. Chertoff*, 2008 WL 4773163, at *3.

## CONCLUSION

For the reasons stated above, the Union's motion for summary judgment on both Vinco's claim against the Union for vacation of the parties' arbitration awards and the Union's counterclaim for confirmation of those awards is GRANTED. The Union's request for costs and attorneys' fees is GRANTED, and the Union is ORDERED to file a motion for attorneys' fees and costs in accordance with Local Rule 54.3.

Enter:
/s/ David H. Coar

_____

David H. Coar
United States District Judge

**Dated:** July 19, 2010